**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| ACCESS POINT FUNDING I 2017-A, LLC, successor in interest to ACCESS POINT FINANCIAL, INC., APF – CPX I, LLC, successor in interest to ACCESS POINT FINANCIAL, INC., and APF – CPX II, LLC, successor in interest to ACCESS POINT FINANCIAL, INC., | CIVIL ACTION FILE NO.: _____ |
| Plaintiffs, | |
| v. | |
| HITESH PATEL, BHAVESH PATEL, REENA PATEL, JASHVANT PATEL, and HANSABEN PATEL, | |
| Defendants. | |

**COMPLAINT**

Plaintiffs Access Point Funding I 2017-A, LLC, successor in interest to

Access Point Financial, Inc., ("Access Point Funding"); APF – CPX I, LLC,

successor in interest to Access Point Financial, Inc., ("APF – CPX I"); and APF –

CPX II, LLC, successor in interest to Access Point Financial, Inc., ("APF – CPX

II" and collectively with Access Point Funding and APF – CPX I, "Plaintiffs") file

this Complaint for damages against Defendants Hitesh Patel, Bhavesh Patel, Reena

Patel, Jashvant Patel, and Hansaben Patel (collectively, "Guarantors" or "Defendants"), respectfully showing this Court as follows:

## Parties, Jurisdiction, and Venue

1.      Access Point Funding is a limited liability company organized and existing under the laws of the state of Delaware with its principal office in DeKalb County, Georgia.

2.      APF – CPX I is a limited liability company organized and existing under the laws of the state of Delaware with its principal office in DeKalb County, Georgia.

3.      APF – CPX II is a limited liability company organized and existing under the laws of the state of Delaware with its principal office in DeKalb County, Georgia.

4.      Hitesh Patel is an individual citizen of the state of California and may be served with process at 458 33rd Avenue, San Francisco, California 94121 or wherever he may be found.

5.      Bhavesh Patel is an individual citizen of the state of California and may be served with process at 458 33rd Avenue, San Francisco, California 94121 or wherever he may be found.

6.     Reena Patel is an individual citizen of the state of California and may be served with process at 458 33rd Avenue, San Francisco, California 94121 or wherever she may be found.

7.     Jashvant Patel is an individual citizen of the state of California and may be served with process at 458 33rd Avenue, San Francisco, California 94121 or wherever he may be found.

8.     Hansaben Patel is an individual citizen of the state of California and may be served with process at 458 33rd Avenue, San Francisco, California 94121 or wherever he may be found.

9.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a), in that there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000.00.

10.     Venue is appropriate in the United States District Court for the Northern District of Georgia pursuant to 28 U.S.C. § 1391(b)(2) and LR 3.1 (B)(3), N.D. Ga. and the forum selection clauses contained in paragraph 14(g) of the Sai Ram Guaranty (defined below), Viraaj Guaranty (defined below), Prithvi Guaranty (defined below), BJH Guaranty (defined below), and Rudra Guaranty (defined below), jurisdiction and venue are proper in this Court.

**Facts**

11.    Beginning in 2017, Access Point Financial, Inc., now known as Access Point Financial, LLC ("Access Point") made five (5) separate loans to different entities totaling approximately $11,400,000.00. Each of these five loans were sponsored primarily by Defendants Hitesh Patel and Bhavesh Patel and were guaranteed by at least some of the Defendants. To date, each of the five loans are in default and Plaintiffs are owed over $10 million. Each loan, and the defaults thereunder, is described in detail below.

*The Sai Ram Loan*

12.    On or about August 16, 2017, Sai Ram Investments, LLC ("Sai Ram") executed and delivered to Access Point at its Georgia address that certain Promissory Note, in the original amount of $1,600,000.00 (as may have been amended, modified, restated, and/or supplemented from time to time, the "Sai Ram Note") for a loan in the same amount (the "Sai Ram Loan"). A true and correct copy of the Sai Ram Note is attached hereto as **Exhibit 1** and incorporated by reference.

13.    On or about August 16, 2017 and to secure the Sai Ram Loan, Sai Ram executed and delivered to Access Point at its Georgia address that certain Equipment Loan and Security Agreement in the amount of $1,600,000.00 (as may

have been amended, modified, restated, and/or supplemented from time to time, the "Sai Ram Loan Agreement"). The Sai Ram Loan Agreement granted Access Point a first priority security interest in, among other things, any and all furnishings, fixtures and equipment, as more specifically described in the Sai Ram Loan Agreement (collectively, the "Sai Ram Collateral"). A true and correct copy of the Sai Ram Loan Agreement is attached hereto as **Exhibit 2** and incorporated by reference.

14.     On or about August 16, 2017 and to further secure the Sai Ram Loan, Jashvant Patel and Hansaben Patel executed and delivered to Access Point at its Georgia address that certain Pledge Agreement (as may have been amended, modified, restated, and/or supplemented from time to time, the "Sai Ram Pledge Agreement") pursuant to which Jashvant Patel and Hansaben Patel unconditionally granted and assigned to Access Point a continuing first priority security interest and security title to Jashvant Patel's and Hansaben Patel's legal and beneficial ownership of 100% of the outstanding membership interests of Sai Ram. A true and correct copy of the Sai Ram Pledge Agreement is attached hereto as **Exhibit 3** and incorporated by reference.

15.     On or about August 16, 2017 and to further secure the Sai Ram Loan, Jashvant Patel and Hansaben Patel executed and delivered to Access Point at its

Georgia address that certain Guaranty Agreement (the "Sai Ram Guaranty") pursuant to which they irrevocably, absolutely, and unconditionally guaranteed to Access Point the prompt payment when due, of all amounts owed by Sai Ram to Access Point under the Sai Ram Note and Sai Ram Loan Agreement. A true and correct copy of the Sai Ram Guaranty is attached hereto as **Exhibit 4** and incorporated by reference.

16.     The Sai Ram Note, the Sai Ram Loan Agreement, the Sai Ram Pledge Agreement, the Sai Ram Guaranty, and all other documents related to the Sai Ram Loan shall be referred to collectively herein as the "Sai Ram Loan Documents."

17.     Access Point subsequently assigned the Sai Ram Loan and related Sai Ram Loan Documents to Access Point Funding, on a servicing retained basis.

18.     Sai Ram failed to pay monthly payments under the Sai Ram Loan Documents as and when due.

19.     On or about February 11, 2020, Access Point sent a letter to Sai Ram notifying it of its defaults pursuant to the Sai Ram Loan Documents and demanding payment of all sums due and payable under the Sai Ram Loan (the "First Sai Ram Delinquency Letter"). A true and correct copy of the First Sai Ram Delinquency Letter is attached hereto as **Exhibit 5** and incorporated by reference

20.    On or about September 12, 2020, Access Point sent a second letter to Sai Ram notifying it of its defaults pursuant to the Sai Ram Loan Documents and demanding payment of all sums due and payable under the Sai Ram Loan (the "Second Sai Ram Delinquency Letter"). A true and correct copy of the Second Sai Ram Delinquency Letter is attached hereto as **Exhibit 6** and incorporated by reference

21.    On or about October 14, 2020, Access Point sent another letter to Sai Ram notifying it of its defaults pursuant to the Sai Ram Loan Documents and demanding payment of all sums due and payable under the Sai Ram Loan (the "Third Sai Ram Delinquency Letter"). A true and correct copy of the Third Sai Ram Delinquency Letter is attached hereto as **Exhibit 7** and incorporated by reference.

22.    On or about November 16, 2020, Access Point sent another letter to Sai Ram notifying it of its defaults pursuant to the Sai Ram Loan Documents and demanding payment of all sums due and payable under the Sai Ram Loan (the "Fourth Sai Ram Delinquency Letter"). A true and correct copy of the Fourth Sai Ram Delinquency Letter is attached hereto as **Exhibit 8** and incorporated by reference.

23.     On or about January 13, 2021, Access Point sent another letter to Sai Ram notifying it of its defaults pursuant to the Sai Ram Loan Documents and demanding payment of all sums due and payable under the Sai Ram Loan (the "Fifth Sai Ram Delinquency Letter"). A true and correct copy of the Fifth Sai Ram Delinquency Letter is attached hereto as **Exhibit 9** and incorporated by reference.

24.     Sai Ram failed to pay as demanded in the First Sai Ram Delinquency Letter, the Second Sai Ram Delinquency Letter, the Third Sai Ram Delinquency Letter, the Fourth Sai Ram Delinquency Letter, and the Fifth Sai Ram Delinquency Letter.

25.     On November 1, 2020, Sai Ram, Jashvant Patel, Hansaben Patel, and Access Point, as loan servicer for Access Point Funding, entered into that certain COVID-19 Forbearance Agreement (the "Sai Ram Forbearance Agreement", also a Sai Ram Loan Document) whereby Access Point agreed to forbear from collection of all monthly payments of interest and principal due under the Sai Ram Loan commencing November 1, 2020 and expiring on April 30, 2021 (the "Sai Ram Forbearance Period"). A true and correct copy of the Sai Ram Forbearance Agreement is attached hereto as **Exhibit 10** and incorporated by reference.

26.     In Section 4 of the Sai Ram Forbearance Agreement, Sai Ram, Jashvant Patel, and Hansaben Patel acknowledged that the outstanding balance of

the Sai Ram Note as of October 31, 2020, exclusive of attorneys' fees, was as follows:

| | | |
|---|---|---:|
| Principal | $ | 1,001,791.26 |
| Interest | $ | 17,920.93 |
| Default Interest | $ | 15,917.35 |
| Late Fees | $ | 6,057.05 |
| UCC Fee | $ | 400.00 |
| Miscellaneous Fee | $ | 400.00 |
| Less Reserves | $ | (331.82) |
| TOTAL: | $ | 1,042,154.77 |

27.    In Section 10 of the Sai Ram Forbearance Agreement, Sai Ram, Jashvant Patel, and Hansaben Patel ratified and reaffirmed their respective obligations under the Sai Ram Loan and ratified and reaffirmed all the provisions of the related Sai Ram Loan Documents, except as expressly amended by the Sai Ram Forbearance Agreement.

28.    Sai Ram failed to pay monthly payments under the Sai Ram Loan Documents as and when due after the end of the Sai Ram Forbearance Period.

29.    Accordingly, on or about May 17, 2021, Access Point sent a letter to Sai Ram notifying it of its defaults pursuant to the Sai Ram Loan Documents and demanding payment of all sums due and payable under the Sai Ram Loan (the "Sixth Sai Ram Delinquency Letter"). A true and correct copy of the Sixth Sai Ram Delinquency Letter is attached hereto as **Exhibit 11** and incorporated by reference.

30.     On or about July 23, 2021, Access Point, through counsel, sent a letter to Sai Ram, Jashvant Patel, and Hansaben Patel, notifying them of their defaults pursuant to the Sai Ram Loan Documents and demanding payment in full of all obligations due and owing under the Sai Ram Loan Documents (the "Sai Ram Default Letter"). A true and correct copy of the Sai Ram Default Letter is attached hereto as **Exhibit 12** and incorporated by reference.

31.     In the Sai Ram Default Letter, Access Point also notified Sai Ram, Jashvant Patel, and Hansaben Patel that, pursuant to O.C.G.A. § 13-1-11, the attorneys' fees provisions under the Sai Ram Loan Documents would be enforced, such that unless all amounts due and owing were paid by Sai Ram, Jashvant Patel, or Hansaben Patel within ten (10) days from the receipt of the Sai Ram Default Letter, Sai Ram, Jashvant Patel, and Hansaben Patel would be liable for reasonable attorneys' fees and costs.

32.     In the Sai Ram Default Letter, Access Point also notified Sai Ram, Jashvant Patel, and Hansaben Patel that, pursuant to O.C.G.A. § 13-4-4, Access Point intended to rely on the exact terms of the Sai Ram Loan Documents notwithstanding any alleged prior departure.

33.     Sai Ram, Jashvant Patel, and Hansaben Patel failed to make payment within the requisite ten (10) days.

34.    As of July 13, 2021, principal, accrued but unpaid interest, and other

charges outstanding under the Sai Ram Loan Documents were as follows:

| | | |
|---|---|---:|
| Principal | $ | 965,224.24 |
| Interest (04/01/2021 – 07/13/2021) | $ | 19,518.98 |
| Default Interest (11/11/2020 – 07/13/2021) | $ | 72,527.40 |
| Deferred Interest (11/01/2020 – 07/13/2021) | $ | 35,830.56 |
| Prepayment Penalty | $ | 9,652.24 |
| NSF Fees | $ | 400.00 |
| UCC/Doc Release Fees | $ | 600.00 |
| Late Fee | $ | 13,325.51 |
| Payoff Fee | $ | 250.00 |
| Unapplied Master Reserves | $ | (331.82) |
| TOTAL: | $ | 1,116,997.11 |
| | | |
| Per diem interest: | $ | 482.61 |

35.    The aforementioned outstanding principal, accrued but unpaid

interest, and other charges outstanding under the Sai Ram Loan Documents are

exclusive of costs of collection and attorneys' fees available under the Sai Ram

Loan Documents and applicable law.

36.    Additional interest, fees, costs, and charges have continued to accrue

and continue to accrue under the Sai Ram Loan Documents from July 13, 2021,

going forward.

*The Viraaj Loan*

37.    On or about March 7, 2018, Viraaj Investments, LLC ("Viraaj") and

Merced Hospitality, LLC ("Merced") executed and delivered to Access Point at its

Georgia address that certain Promissory Note, in the original amount of $1,600,000.00 (as may have been amended, modified, restated, and/or supplemented from time to time, the "Viraaj Note") for a loan in the same amount (the "Viraaj Loan"). A true and correct copy of the Viraaj Note is attached hereto as **Exhibit 13** and incorporated by reference.

38.     On or about March 7, 2018 and to secure the Viraaj Loan, Viraaj and Merced executed and delivered to Access Point at its Georgia address that certain Equipment Loan and Security Agreement in the amount of $1,600,000.00 (as may have been amended, modified, restated, and/or supplemented from time to time, the "Viraaj Loan Agreement"). The Viraaj Loan Agreement granted Access Point a first priority security interest in, among other things, any and all furnishings, fixtures and equipment, as more specifically described in the Viraaj Loan Agreement (collectively, the "Viraaj Collateral"). A true and correct copy of the Viraaj Loan Agreement is attached hereto as **Exhibit 14** and incorporated by reference.

39.     On or about March 7, 2018 and to further secure the Viraaj Loan, Hitesh Patel, Bhavesh Patel, and Reena Patel executed and delivered to Access Point at its Georgia address that certain Pledge Agreement (as may have been amended, modified, restated, and/or supplemented from time to time, the "Viraaj

Pledge Agreement") pursuant to which Hitesh Patel, Bhavesh Patel, and Reena Patel unconditionally granted and assigned to Access Point a continuing first priority security interest and security title to Hitesh Patel's, Bhavesh Patel's, and Reena Patel's legal and beneficial ownership of 100% of the outstanding membership interests of Viraaj. A true and correct copy of the Viraaj Pledge Agreement is attached hereto as **Exhibit 15** and incorporated by reference.

40.   On or about March 7, 2018 and to further secure the Viraaj Loan, Bhavesh Patel executed and delivered to Access Point at its Georgia address that certain Pledge Agreement (as may have been amended, modified, restated, and/or supplemented from time to time, the "Merced Pledge Agreement") pursuant to which Bhavesh Patel unconditionally granted and assigned to Access Point a continuing first priority security interest and security title to Bhavesh Patel's legal and beneficial ownership of 100% of the outstanding membership interests of Merced. A true and correct copy of the Merced Pledge Agreement is attached hereto as **Exhibit 16** and incorporated by reference.

41.   On or about February 28, 2018 and to further secure the Viraaj Loan, Hitesh Patel, Bhavesh Patel, and Reena Patel executed and delivered to Access Point at its Georgia address that certain Guaranty Agreement (the "Viraaj Guaranty") pursuant to which they irrevocably, absolutely, and unconditionally

guaranteed to Access Point the prompt payment when due, of all amounts owed by Viraaj and Merced to Access Point under the Viraaj Note and Viraaj Loan Agreement. A true and correct copy of the Viraaj Guaranty is attached hereto as **Exhibit 17** and incorporated by reference.

42.     The Viraaj Note, the Viraaj Loan Agreement, the Viraaj Pledge Agreement, the Merced Pledge Agreement, the Viraaj Guaranty, and all other documents related to the Viraaj Loan shall be referred to collectively herein as the "Viraaj Loan Documents."

43.     Access Point subsequently assigned the Viraaj Loan and related Viraaj Loan Documents to APF – CPX II, on a servicing retained basis.

44.     On or about April 27, 2021, Access Point, through counsel, sent a letter to Viraaj, Merced, Hitesh Patel, Bhavesh Patel, and Reena Patel, notifying them of their defaults pursuant to the Viraaj Loan Documents and demanding payment in full of all obligations due and owing under the Viraaj Loan Documents (the "First Viraaj Default Letter"). A true and correct copy of the First Viraaj Default Letter is attached hereto as **Exhibit 18** and incorporated by reference.

45.     In the First Viraaj Default Letter, Access Point also notified Viraaj, Merced, Hitesh Patel, Bhavesh Patel, and Reena Patel that, pursuant to O.C.G.A. § 13-1-11, the attorneys' fees provisions under the Viraaj Loan Documents would be

enforced, such that unless all amounts due and owing were paid by Viraaj, Merced, Hitesh Patel, Bhavesh Patel, or Reena Patel within ten (10) days from the receipt of the First Viraaj Default Letter, Viraaj, Merced, Hitesh Patel, Bhavesh Patel, and Reena Patel would be liable for reasonable attorneys' fees and costs.

46.    In the First Viraaj Default Letter, Access Point also notified Viraaj, Merced, Hitesh Patel, Bhavesh Patel, and Reena Patel that, pursuant to O.C.G.A. § 13-4-4, Access Point intended to rely on the exact terms of the Viraaj Loan Documents notwithstanding any alleged prior departure.

47.    On or about July 23, 2021, Access Point, through counsel, sent another letter to Viraaj, Merced, Hitesh Patel, Bhavesh Patel, and Reena Patel, notifying them of their defaults pursuant to the Viraaj Loan Documents and demanding payment in full of all obligations due and owing under the Viraaj Loan Documents (the "Second Viraaj Default Letter"). A true and correct copy of the Second Viraaj Default Letter is attached hereto as **Exhibit 19** and incorporated by reference.

48.    In the Second Viraaj Default Letter, Access Point also notified Viraaj, Merced, Hitesh Patel, Bhavesh Patel, and Reena Patel that, pursuant to O.C.G.A. § 13-1-11, the attorneys' fees provisions under the Viraaj Loan Documents would be enforced, such that unless all amounts due and owing were paid Viraaj, Merced,

Hitesh Patel, Bhavesh Patel, or Reena Patel within ten (10) days from the receipt of the Second Viraaj Default Letter, Viraaj, Merced, Hitesh Patel, Bhavesh Patel, and Reena Patel would be liable for reasonable attorneys' fees and costs.

49.     In the Second Viraaj Default Letter, Access Point also notified Viraaj, Merced, Hitesh Patel, Bhavesh Patel, and Reena Patel that, pursuant to O.C.G.A. § 13-4-4, Access Point intended to rely on the exact terms of the Viraaj Loan Documents notwithstanding any alleged prior departure.

50.     Viraaj, Merced, Hitesh Patel, Bhavesh Patel, and Reena Patel failed to make payment within the requisite ten (10) days.

51.     As of July 13, 2021, principal, accrued but unpaid interest, and other charges outstanding under the Viraaj Loan Documents were as follows:

| | |
|---|---|
| Principal | $   1,171,458.82 |
| Interest (02/01/2021 – 07/13/2021) | $        43,206.44 |
| Default Interest (03/11/2021 – 07/13/2021) | $        41,051.52 |
| Prepayment Penalty | $        11,714.59 |
| UCC Fees | $             400.00 |
| Late Fees | $        14,623.31 |
| NSF Fee | $             300.00 |
| Payoff Fee | $             250.00 |
| TOTAL: | $   1,285,755.88 |
| | |
| Per diem interest: | $             585.73 |

52.     The aforementioned outstanding principal, accrued but unpaid interest, and other charges outstanding under the Viraaj Loan Documents are

exclusive of costs of collection and attorneys' fees available under the Viraaj Loan Documents and applicable law.

53.     Additional interest, fees, costs, and charges have continued to accrue and continue to accrue under the Viraaj Loan Documents from July 13, 2021, going forward.

*The Prithvi Loan*

54.     On or about November 19, 2018, Prithvi Investments, LLC ("<u>Prithvi</u>") executed and delivered to Access Point at its Georgia address that certain Promissory Note, in the original amount of $2,100,000.00 (as may have been amended, modified, restated, and/or supplemented from time to time, the "<u>Prithvi Note</u>") for a loan in the same amount (the "<u>Prithvi Loan</u>"). A true and correct copy of the Prithvi Note is attached hereto as **Exhibit 20** and incorporated by reference.

55.     On or about November 19, 2018 and to secure the Prithvi Loan, Prithvi executed and delivered to Access Point at its Georgia address that certain Equipment Loan and Security Agreement in the amount of $2,100,000.00 (as may have been amended, modified, restated, and/or supplemented from time to time, the "<u>Prithvi Loan Agreement</u>"). The Prithvi Loan Agreement granted Access Point a first priority security interest in, among other things, any and all furnishings, fixtures and equipment, as more specifically described in the Prithvi Loan

Agreement (collectively, the "Prithvi Collateral"). A true and correct copy of the Prithvi Loan Agreement is attached hereto as **Exhibit 21** and incorporated by reference.

56.    On or about November 19, 2018 and to further secure the Prithvi Loan, Bhavesh Patel and Reena Patel executed and delivered to Access Point at its Georgia address that certain Pledge Agreement (as may have been amended, modified, restated, and/or supplemented from time to time, the "Prithvi Pledge Agreement") pursuant to which Bhavesh Patel and Reena Patel unconditionally granted and assigned to Access Point a continuing first priority security interest and security title to Bhavesh Patel's and Reena Patel's legal and beneficial ownership of 100% of the outstanding membership interests of Prithvi. A true and correct copy of the Prithvi Pledge Agreement is attached hereto as **Exhibit 22** and incorporated by reference.

57.    On or about November 19, 2018 and to further secure the Prithvi Loan, Bhavesh Patel, Reena Patel, and Hitesh Patel executed and delivered to Access Point at its Georgia address that certain Pledge Agreement (as may have been amended, modified, restated, and/or supplemented from time to time, the "Hansaben Pledge Agreement") pursuant to which Bhavesh Patel, Reena Patel, and Hitesh Patel unconditionally granted and assigned to Access Point a continuing

first priority security interest and security title to Bhavesh Patel's, Reena Patel's, and Hitesh Patel's legal and beneficial ownership of 100% of the outstanding membership interests of Hansaben Investments, LLC. A true and correct copy of the Hansaben Pledge Agreement is attached hereto as **Exhibit 23** and incorporated by reference.

58.     On or about November 19, 2018 and to further secure the Prithvi Loan, Bhavesh Patel and Reena Patel executed and delivered to Access Point at its Georgia address that certain Guaranty Agreement (the "Prithvi Guaranty") pursuant to which they irrevocably, absolutely, and unconditionally guaranteed to Access Point the prompt payment when due, of all amounts owed by Prithvi to Access Point under the Prithvi Note and Prithvi Loan Agreement. A true and correct copy of the Prithvi Guaranty is attached hereto as **Exhibit 24** and incorporated by reference.

59.     The Prithvi Note, the Prithvi Loan Agreement, the Prithvi Pledge Agreement, the Hansaben Pledge Agreement, the Prithvi Guaranty, and all other documents related to the Prithvi Loan shall be referred to collectively herein as the "Prithvi Loan Documents."

60.     Access Point subsequently assigned the Prithvi Loan and related Prithvi Loan Documents to APF – CPX I, on a servicing retained basis.

61.    On or about February 11, 2020, Access Point sent a letter to Prithvi notifying it of its defaults pursuant to the Prithvi Loan Documents and demanding payment of all sums due and payable under the Prithvi Loan (the "Prithvi Delinquency Letter"). A true and correct copy of the Prithvi Delinquency Letter is attached hereto as **Exhibit 25** and incorporated by reference.

62.    On or about April 27, 2021, Access Point, through counsel, sent a letter to Prithvi, Bhavesh Patel, and Reena Patel, notifying them of their defaults pursuant to the Prithvi Loan Documents and demanding payment in full of all obligations due and owing under the Prithvi Loan Documents (the "First Prithvi Default Letter"). A true and correct copy of the First Prithvi Default Letter is attached hereto as **Exhibit 26** and incorporated by reference.

63.    In the First Prithvi Default Letter, Access Point also notified Prithvi, Bhavesh Patel, and Reena Patel that, pursuant to O.C.G.A. § 13-1-11, the attorneys' fees provisions under the Prithvi Loan Documents would be enforced, such that unless all amounts due and owing were paid by Prithvi, Bhavesh Patel, or Reena Patel within ten (10) days from the receipt of the First Prithvi Default Letter, Prithvi, Bhavesh Patel, and Reena Patel would be liable for reasonable attorneys' fees and costs.

64.    In the First Prithvi Default Letter, Access Point also notified Prithvi, Bhavesh Patel, and Reena Patel that, pursuant to O.C.G.A. § 13-4-4, Access Point intended to rely on the exact terms of the Prithvi Loan Documents notwithstanding any alleged prior departure.

65.    On or about July 23, 2021, Access Point, through counsel, sent another letter to Prithvi, Bhavesh Patel, and Reena Patel, notifying them of their defaults pursuant to the Prithvi Loan Documents and demanding payment in full of all obligations due and owing under the Prithvi Loan Documents (the "Second Prithvi Default Letter"). A true and correct copy of the Second Prithvi Default Letter is attached hereto as **Exhibit 27** and incorporated by reference.

66.    In the Second Prithvi Default Letter, Access Point also notified Prithvi, Bhavesh Patel, and Reena Patel that, pursuant to O.C.G.A. § 13-1-11, the attorneys' fees provisions under the Prithvi Loan Documents would be enforced, such that unless all amounts due and owing were paid by Prithvi, Bhavesh Patel, or Reena Patel within ten (10) days from the receipt of the Second Prithvi Default Letter, Prithvi, Bhavesh Patel, and Reena Patel would be liable for reasonable attorneys' fees and costs.

67.    In the Second Prithvi Default Letter, Access Point also notified Prithvi, Bhavesh Patel, and Reena Patel that, pursuant to O.C.G.A. § 13-4-4,

Access Point intended to rely on the exact terms of the Prithvi Loan Documents notwithstanding any alleged prior departure.

68.    Prithvi, Bhavesh Patel, and Reena Patel failed to make payment within the requisite ten (10) days.

69.    As of July 13, 2021, principal, accrued but unpaid interest, and other charges outstanding under the Prithvi Loan Documents were as follows:

| | |
|---|---|
| Principal | $  1,642,987.14 |
| Interest (06/01/2021 – 07/13/2021) | $       16,866.78 |
| Default Interest (05/11/2021 – 07/13/2021) | $       28,479.29 |
| Prepayment Penalty | $       29,289.61 |
| UCC Fees | $            400.00 |
| NSF Fees | $            700.00 |
| Late Fees | $       29,762.54 |
| Payoff Fee | $            250.00 |
| TOTAL: | $  1,768,735.36 |
| | |
| Per diem interest: | $            821.50 |

70.    The aforementioned outstanding principal, accrued but unpaid interest, and other charges outstanding under the Prithvi Loan Documents are exclusive of costs of collection and attorneys' fees available under the Prithvi Loan Documents and applicable law.

71.    Additional interest, fees, costs, and charges have continued to accrue and continue to accrue under the Prithvi Loan Documents from July 13, 2021, going forward.

*The BJH Loan*

72.   On or about August 7, 2019, BJH Investments, LLC ("BJH") executed and delivered to Access Point at its Georgia address that certain Promissory Note, in the original amount of $2,100,000.00 (as may have been amended, modified, restated, and/or supplemented from time to time, the "BJH Note") for a loan in the same amount (the "BJH Loan"). A true and correct copy of the BJH Note is attached hereto as **Exhibit 28** and incorporated by reference.

73.   On or about August 7, 2019 and to secure the BJH Loan, BJH executed and delivered to Access Point at its Georgia address that certain Equipment Loan and Security Agreement in the amount of $2,100,000.00 (as may have been amended, modified, restated, and/or supplemented from time to time, the "BJH Loan Agreement"). The BJH Loan Agreement granted Access Point a first priority security interest in, among other things, any and all furnishings, fixtures and equipment, as more specifically described in the BJH Loan Agreement (collectively, the "BJH Collateral"). A true and correct copy of the BJH Loan Agreement is attached hereto as **Exhibit 29** and incorporated by reference.

74.   On or about August 7, 2019 and to further secure the BJH Loan, Bhavesh Patel and Reena Patel executed and delivered to Access Point at its Georgia address that certain Pledge Agreement (as may have been amended,

modified, restated, and/or supplemented from time to time, the "BJH Pledge Agreement") pursuant to which Bhavesh Patel and Reena Patel unconditionally granted and assigned to Access Point a continuing first priority security interest and security title to Bhavesh Patel's and Reena Patel's legal and beneficial ownership of 100% of the outstanding membership interests of BJH. A true and correct copy of the BJH Pledge Agreement is attached hereto as **Exhibit 30** and incorporated by reference.

76.     On or about August 2, 2019 and to further secure the BJH Loan, Bhavesh Patel and Reena Patel executed and delivered to Access Point at its Georgia address that certain Guaranty Agreement (the "BJH Guaranty") pursuant to which they irrevocably, absolutely, and unconditionally guaranteed to Access Point the prompt payment when due, of all amounts owed by BJH to Access Point under the BJH Note and BJH Loan Agreement. A true and correct copy of the BJH Guaranty is attached hereto as **Exhibit 31** and incorporated by reference.

76.     The BJH Note, the BJH Loan Agreement, the BJH Pledge Agreement, the BJH Guaranty, and all other documents related to the BJH Loan shall be referred to collectively herein as the "BJH Loan Documents."

77.     Access Point subsequently assigned the BJH Loan and related BJH Loan Documents to APF – CPX I, on a servicing retained basis.

78.    On or about May 3, 2021, Access Point, through counsel, sent a letter to BJH, notifying it of its defaults pursuant to the BJH Loan Agreement and demanding that within thirty (30) days BJH provide written notice that it had commenced to cure the identified defaults (the "BJH Reservation of Rights Letter"). A true and correct copy of the BJH Reservation of Rights Letter is attached hereto as **Exhibit 32** and incorporated by reference.

79.    In the BJH Reservation of Rights Letter, Access Point also notified BJH that, pursuant to O.C.G.A. § 13-4-4, Access Point intended to rely on the exact terms of the BJH Loan Documents notwithstanding any alleged prior departure.

80.    On or about May 17, 2021, Access Point sent a letter to BJH, notifying it of its defaults pursuant to the BJH Loan Documents and demanding payment of all sums due and payable under the BJH Loan (the "BJH Delinquency Letter"). A true and correct copy of the BJH Delinquency Letter is attached hereto as **Exhibit 33** and incorporated by reference.

81.    On or about July 23, 2021, Access Point, through counsel, sent a letter to BJH, Bhavesh Patel, and Reena Patel, notifying them of their defaults pursuant to the BJH Loan Documents and demanding payment in full of all obligations due and owing under the BJH Loan Documents (the "BJH Default Letter"). A true and

correct copy of the BJH Default Letter is attached hereto as **Exhibit 34** and incorporated by reference.

82.    In the BJH Default Letter, Access Point also notified BJH, Bhavesh Patel, and Reena Patel that, pursuant to O.C.G.A. § 13-1-11, the attorneys' fees provisions under the BJH Loan Documents would be enforced, such that unless all amounts due and owing were paid by BJH, Bhavesh Patel, or Reena Patel within ten (10) days from the receipt of the BJH Default Letter, BJH, Bhavesh Patel, and Reena Patel would be liable for reasonable attorneys' fees and costs.

83.    In the BJH Default Letter, Access Point also notified BJH, Bhavesh Patel, and Reena Patel that, pursuant to O.C.G.A. § 13-4-4, Access Point intended to rely on the exact terms of the BJH Loan Documents notwithstanding any alleged prior departure.

84.    BJH, Bhavesh Patel, and Reena Patel failed to make payment within the requisite ten (10) days.

85.    As of July 13, 2021, principal, accrued but unpaid interest, and other charges outstanding under the BJH Loan Documents were as follows:

| | |
|---|---|
| Principal | $ 1,880,457.44 |
| Interest (06/01/2021 – 07/13/2021) | $ 24,055.89 |
| Default Interest (06/11/2021 – 07/13/2021) | $ 13,170.27 |
| UCC Fees | $ 400.00 |
| Exit Fee | $ 75,218.30 |
| Late Fees | $ 5,958.62 |

| | | |
|---|---|---|
| Miscellaneous Fees | $ | 100.00 |
| Payoff Fee | $ | 250.00 |
| Master Reserves | $ | (3,379.92) |
| TOTAL: | $ | 1,996,230.60 |
| | | |
| Per diem interest: | $ | 940.23 |

86.    The aforementioned outstanding principal, accrued but unpaid interest, and other charges outstanding under the BJH Loan Documents are exclusive of costs of collection and attorneys' fees available under the BJH Loan Documents and applicable law.

87.    Additional interest, fees, costs, and charges have continued to accrue and continue to accrue under the BJH Loan Documents from July 13, 2021, going forward.

*The Rudra Loan*

88.    On or about June 5, 2020, Rudra Investments, LLC ("Rudra") executed and delivered to Access Point at its Georgia address that certain Promissory Note, in the original amount of $4,000,000.00 (as may have been amended, modified, restated, and/or supplemented from time to time, the "Rudra Note") for a loan in the same amount (the "Rudra Loan"). A true and correct copy of the Rudra Note is attached hereto as **Exhibit 35** and incorporated by reference.

89.    On or about June 5, 2020 and to secure the Rudra Loan, Rudra executed and delivered to Access Point at its Georgia address that certain

Equipment Loan and Security Agreement in the amount of $4,000,000.00 (as may have been amended, modified, restated, and/or supplemented from time to time, the "Rudra Loan Agreement"). The Rudra Loan Agreement granted Access Point a first priority security interest in, among other things, any and all furnishings, fixtures and equipment, as more specifically described in the Rudra Loan Agreement (collectively, the "Rudra Collateral"). A true and correct copy of the Rudra Loan Agreement is attached hereto as **Exhibit 36** and incorporated by reference.

90.    On or about June 5, 2020 and to further secure the Rudra Loan, Hitesh Patel executed and delivered to Access Point at its Georgia address that certain Pledge Agreement (as may have been amended, modified, restated, and/or supplemented from time to time, the "Rudra Pledge Agreement") pursuant to which Hitesh Patel unconditionally granted and assigned to Access Point a continuing first priority security interest and security title to Hitesh Patel's legal and beneficial ownership of 100% of the outstanding membership interests of Rudra. A true and correct copy of the Rudra Pledge Agreement is attached hereto as **Exhibit 37** and incorporated by reference.

91.    On or about May 26, 2020 and to further secure the Rudra Loan, Hitesh Patel executed and delivered to Access Point at its Georgia address that

certain Guaranty Agreement (the "Rudra Guaranty") pursuant to which they irrevocably, absolutely, and unconditionally guaranteed to Access Point the prompt payment when due, of all amounts owed by Rudra to Access Point under the Rudra Note and Rudra Loan Agreement. A true and correct copy of the Rudra Guaranty is attached hereto as **Exhibit 38** and incorporated by reference.

92.     The Rudra Note, the Rudra Loan Agreement, the Rudra Pledge Agreement, the Rudra Guaranty, and all other documents related to the Rudra Loan shall be referred to collectively herein as the "Rudra Loan Documents."

93.     Access Point subsequently assigned the Rudra Loan and related Rudra Loan Documents to APF – CPX I, on a servicing retained basis.

94.     On or about April 27, 2021, Access Point, through counsel, sent a letter to Rudra and Hitesh Patel, notifying them of their defaults pursuant to the Rudra Loan Documents and demanding payment in full of all obligations due and owing under the Rudra Loan Documents (the "First Rudra Default Letter"). A true and correct copy of the First Rudra Default Letter is attached hereto as **Exhibit 39** and incorporated by reference.

95.     In the First Rudra Default Letter, Access Point also notified Rudra and Hitesh Patel that, pursuant to O.C.G.A. § 13-1-11, the attorneys' fees provisions under the Rudra Loan Documents would be enforced, such that unless all amounts

due and owing were paid by Rudra or Hitesh Patel within ten (10) days from the receipt of the First Rudra Default Letter, Rudra and Hitesh Patel would be liable for reasonable attorneys' fees and costs.

96.     In the First Rudra Default Letter, Access Point also notified Rudra and Hitesh Patel that, pursuant to O.C.G.A. § 13-4-4, Access Point intended to rely on the exact terms of the Rudra Loan Documents notwithstanding any alleged prior departure.

97.     On or about July 23, 2021, Access Point, through counsel, sent another letter to Rudra and Hitesh Patel, notifying them of their defaults pursuant to the Rudra Loan Documents and demanding payment in full of all obligations due and owing under the Rudra Loan Documents (the "Second Rudra Default Letter"). A true and correct copy of the Second Rudra Default Letter is attached hereto as **Exhibit 40** and incorporated by reference.

98.     In the Second Rudra Default Letter, Access Point also notified Rudra and Hitesh Patel that, pursuant to O.C.G.A. § 13-1-11, the attorneys' fees provisions under the Rudra Loan Documents would be enforced, such that unless all amounts due and owing were paid Rudra or Hitesh Patel within ten (10) days from the receipt of the Second Rudra Default Letter, Rudra and Hitesh Patel would be liable for reasonable attorneys' fees and costs.

99.   In the Second Rudra Default Letter, Access Point also notified Rudra and Hitesh Patel that, pursuant to O.C.G.A. § 13-4-4, Access Point intended to rely on the exact terms of the Rudra Loan Documents notwithstanding any alleged prior departure.

100.   Rudra and Hitesh Patel failed to make payment within the requisite ten (10) days.

101.   As of July 13, 2021, principal, accrued but unpaid interest, and other charges outstanding under the Rudra Loan Documents were as follows:

| | | |
|---|---|---|
| Principal | $ | 4,000,000.0 |
| Interest (06/01/2021 – 07/13/2021) | $ | 31,169.84 |
| Default Interest (06/11/2021 – 07/13/2021) | $ | 36,666.67 |
| Prepayment Penalty | $ | 80,000.00 |
| UCC Fees | $ | 400.00 |
| Late Fees | $ | 14,317.51 |
| NSF Fee | $ | 100.00 |
| Payoff Fee | $ | 250.00 |
| TOTAL: | $ | 4,162,904.02 |
| | | |
| Per diem interest: | $ | 2,000.00 |

102.   The aforementioned outstanding principal, accrued but unpaid interest, and other charges outstanding under the Rudra Loan Documents are exclusive of costs of collection and attorneys' fees available under the Rudra Loan Documents and applicable law.

103.   Additional interest, fees, costs, and charges have continued to accrue and continue to accrue under the Rudra Loan Documents from July 13, 2021, going forward.

<u>**COUNT I – BREACH OF SAI RAM GUARANTY**</u>
(*against Defendants Jashvant Patel and Hansaben Patel*)

104.   Paragraphs 1 through 36 of this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

105.   The Sai Ram Guaranty is a valid and enforceable contract between Jashvant Patel and Hansaben Patel and Access Point Funding, as successor in interest to Access Point.

106.   Access Point and Access Point Funding fully performed their obligations under the Sai Ram Guaranty.

107.   Under the Sai Ram Guaranty, Jashvant Patel and Hansaben Patel "irrevocably, absolutely and unconditionally guarantee[d] to [Access Point Funding] the prompt payment when due, whether at stated maturity, by acceleration or otherwise, of . . . the principal sum evidenced by the [Sai Ram Note] and secured by the [Sai Ram Loan Agreement], or so much thereof as may be outstanding from time to time, together with interest thereon at the rates of interest specified in the [Sai Ram Note], late fees, prepayment consideration, and

all other sums which may or shall become due and payable pursuant to the provisions of the [Sai Ram Loan Documents]."

108.   Jashvant Patel and Hansaben Patel breached the Sai Ram Guaranty by failing to pay to Access Point Funding all amounts due by Sai Ram under the Sai Ram Note upon demand for same.

109.   Access Point Funding was damaged as a result of the breach of contract described above.

110.   Access Point Funding is entitled to recover from Jashvant Patel and Hansaben Patel, jointly and severally, all amounts due, owing, and accruing under the Sai Ram Loan Documents and applicable law, including but not limited to, the amount due and payable under the Sai Ram Note as of July 13, 2021 in the total amount of $1,116,997.11, consisting of $965,224.24 in principal, $127,876.94 in accrued interest, and $24,227.75 in fees, less $331.82 in unapplied master reserves, with additional interest accruing at the combined (contract and default interest rate) amount of $482.61 per day, plus such further expenses, costs, and attorneys' fees as the same have accrued and continue to accrue.

## COUNT II – BREACH OF VIRAAJ GUARANTY
(*against Defendants Hitesh Patel, Bhavesh Patel, and Reena Patel*)

111.   Paragraphs 1 through 11 and 37 through 53 of this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

112. The Viraaj Guaranty is a valid and enforceable contract between Hitesh Patel, Bhavesh Patel, and Reena Patel and APF – CPX II, as successor in interest to Access Point.

113. Access Point and APF – CPX II fully performed their obligations under the Viraaj Guaranty.

114. Under the Viraaj Guaranty, Hitesh Patel, Bhavesh Patel, and Reena Patel "irrevocably, absolutely and unconditionally guarantee[d] to [APF – CPX II] the prompt payment when due, whether at stated maturity, by acceleration or otherwise, of . . . the principal sum evidenced by the [Viraaj Note] and secured by the [Viraaj Loan Agreement], or so much thereof as may be outstanding from time to time, together with interest thereon at the rates of interest specified in the [Viraaj Note], late fees, prepayment consideration, and all other sums which may or shall become due and payable pursuant to the provisions of the [Viraaj Loan Documents]."

115. Hitesh Patel, Bhavesh Patel, and Reena Patel breached the Viraaj Guaranty by failing to pay to APF – CPX II all amounts due by Viraaj and Merced under the Viraaj Note upon demand for same.

116. APF – CPX II was damaged as a result of the breach of contract described above.

117.   APF – CPX II is entitled to recover from Hitesh Patel, Bhavesh Patel, and Reena Patel, jointly and severally, all amounts due, owing, and accruing under the Viraaj Loan Documents and applicable law, including but not limited to, the amount due and payable under the Viraaj Note as of July 13, 2021 in the total amount of $1,283,004.68, consisting of $1,171,458.82 in principal, $84,257.96 in accrued interest, and $27,287.90 in fees, with additional interest accruing at the combined (contract and default interest rate) amount of $585.73 per day, plus such further expenses, costs, and attorneys' fees as the same have accrued and continue to accrue.

## COUNT III – BREACH OF PRITHVI GUARANTY
### (*against Defendants Bhavesh Patel and Reena Patel*)

118.   Paragraphs 1 through 11 and 54 through 71 of this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

119.   The Prithvi Guaranty is a valid and enforceable contract between Bhavesh Patel and Reena Patel and APF – CPX I, as successor in interest to Access Point.

120.   Access Point and APF – CPX I fully performed their obligations under the Prithvi Guaranty.

121. Under the Prithvi Guaranty, Bhavesh Patel and Reena Patel "irrevocably, absolutely and unconditionally guarantee[d] to [APF – CPX I] the

prompt payment when due, whether at stated maturity, by acceleration or otherwise, of . . . the principal sum evidenced by the [Prithvi Note] and secured by the [Prithvi Loan Agreement], or so much thereof as may be outstanding from time to time, together with interest thereon at the rates of interest specified in the [Prithvi Note], late fees, prepayment consideration, and all other sums which may or shall become due and payable pursuant to the provisions of the [Prithvi Loan Documents]."

122.   Bhavesh Patel and Reena Patel breached the Prithvi Guaranty by failing to pay to APF – CPX I all amounts due by Prithvi under the Prithvi Note upon demand for same.

123.   APF – CPX I was damaged as a result of the breach of contract described above.

124.   APF – CPX I is entitled to recover from Bhavesh Patel and Reena Patel, jointly and severally, all amounts due, owing, and accruing under the Prithvi Loan Documents and applicable law, including but not limited to, the amount due and payable under the Prithvi Note as of July 13, 2021 in the total amount of $1,748,735.36, consisting of $1,642,987.14 in principal, $45,346.07 in accrued interest, and $60,402.15 in fees, with additional interest accruing at the combined (contract and default interest rate) amount of $821.50 per day, plus such further

expenses, costs, and attorneys' fees as the same have accrued and continue to accrue.

## COUNT IV – BREACH OF BJH GUARANTY
### (*against Defendants Bhavesh Patel Reena Patel*)

125. Paragraphs 1 through 11 and 72 through 87 of this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

126. The BJH Guaranty is a valid and enforceable contract between Bhavesh Patel and Reena Patel and APF – CPX I, as successor in interest to Access Point.

127. Access Point and APF – CPX I fully performed their obligations under the BJH Guaranty.

128. Under the BJH Guaranty, Bhavesh Patel and Reena Patel "irrevocably, absolutely and unconditionally guarantee[d] to [APF – CPX I] the prompt payment when due, whether at stated maturity, by acceleration or otherwise, of . . . the principal sum evidenced by the [BJH Note] and secured by the [BJH Loan Agreement], or so much thereof as may be outstanding from time to time, together with interest thereon at the rates of interest specified in the [BJH Note], late fees, prepayment consideration, and all other sums which may or shall become due and payable pursuant to the provisions of the [BJH Loan Documents]."

129.   Bhavesh Patel and Reena Patel breached the BJH Guaranty by failing to pay to APF – CPX I all amounts due by BJH under the BJH Note upon demand for same.

130.   APF – CPX I was damaged as a result of the breach of contract described above.

131.   APF – CPX I is entitled to recover from Bhavesh Patel and Reena Patel, jointly and severally, all amounts due, owing, and accruing under the BJH Loan Documents and applicable law, including but not limited to, the amount due and payable under the BJH Note as of July 13, 2021 in the total amount of $1,996,230.60, consisting of $1,880,457.44 in principal, $37,226.16 in accrued interest, and $81,926.92 in fees, less $3,379.92 in unapplied master reserves, with additional interest accruing at the combined (contract and default interest rate) amount of $940.23 per day, plus such further expenses, costs, and attorneys' fees as the same have accrued and continue to accrue.

## <u>COUNT V – BREACH OF RUDRA GUARANTY</u>
(*against Defendant Hitesh Patel*)

132.   Paragraphs 1 through 11 and 88 through 103 of this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

133.   The Rudra Guaranty is a valid and enforceable contract between Hitesh Patel and APF – CPX I, as successor in interest to Access Point.

134.   Access Point and APF – CPX I fully performed their obligations under the Rudra Guaranty.

135.   Under the Rudra Guaranty, Hitesh Patel "irrevocably, absolutely and unconditionally guarantee[d] to [APF – CPX I] the prompt payment when due, whether at stated maturity, by acceleration or otherwise, of . . . the principal sum evidenced by the [Rudra Note] and secured by the [Rudra Loan Agreement], or so much thereof as may be outstanding from time to time, together with interest thereon at the rates of interest specified in the [Rudra Note], late fees, prepayment consideration, and all other sums which may or shall become due and payable pursuant to the provisions of the [Rudra Loan Documents]."

136.   Hitesh Patel breached the Rudra Guaranty by failing to pay to APF – CPX I all amounts due by Rudra under the Rudra Note upon demand for same.

137.   APF – CPX I was damaged as a result of the breach of contract described above.

138.   APF – CPX I is entitled to recover from Hitesh Patel all amounts due, owing, and accruing under the Rudra Loan Documents and applicable law, including but not limited to, the amount due and payable under the Rudra Note as of July 13, 2021 in the total amount of $4,162,904.02, consisting of $4,000,000.00 in principal, $67,836.51 in accrued interest, and $95,067.51 in fees, with additional

interest accruing at the combined (contract and default interest rate) amount of $2,000.00 per day, plus such further expenses, costs, and attorneys' fees as the same have accrued and continue to accrue.

## COUNT VI – UNJUST ENRICHMENT
### (*against all Defendants*)

139.   The foregoing paragraphs of this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

140.   Plaintiffs, as successors in interest to Access Point, provided Defendants a valuable service by advancing money to Sai Ram, Viraaj, Merced, Prithvi, BJH, and Rudra (collectively, "Borrowers") under the respective Sai Ram Loan Documents, Viraaj Loan Documents, Prithvi Loan Documents, BJH Loan Documents, and Rudra Loan Documents (collectively, "Loan Documents").

141.   Defendants requested and knowingly accepted the benefits accruing under the Loan Documents.

142.   Defendants' receipt of the aforementioned benefits would be unjust without compensating Plaintiffs.

143.   Defendants have been unjustly enriched in the amount of the outstanding unpaid principal and interest under the Loan Documents, plus expenses, costs, and attorneys' fees.

144.   Jashvant Patel and Hansaben Patel, in fairness and good conscience, should remit to Access Point Funding the extent of the value conferred, which includes all amounts due, owing, and accruing under the Sai Ram Note, the Sai Ram Loan Agreement, related Sai Ram Loan Documents, and applicable law, including but not limited to, the amount due and payable under the Sai Ram Note as of July 13, 2021 in the total amount of $1,116,997.11, consisting of $965,224.24 in principal, $127,876.94 in accrued interest, and $24,227.75 in fees, less $331.82 in unapplied master reserves, with additional interest accruing at the combined (contract and default interest rate) amount of $482.61 per day, plus such further expenses, costs, and attorneys' fees as the same have accrued and continue to accrue.

145.   Hitesh Patel, Bhavesh Patel, and Reena Patel, in fairness and good conscience, should remit to APF – CPX II the extent of the value conferred, which includes all amounts due, owing, and accruing under the Viraaj Note, the Viraaj Loan Agreement, related Viraaj Loan Documents, and applicable law, including but not limited to, the amount due and payable under the Viraaj Note as of July 13, 2021 in the total amount of $1,283,004.68, consisting of $1,171,458.82 in principal, $84,257.96 in accrued interest, and $27,287.90 in fees, with additional interest accruing at the combined (contract and default interest rate) amount of

$585.73 per day, plus such further expenses, costs, and attorneys' fees as the same have accrued and continue to accrue.

146. Bhavesh Patel and Reena Patel, in fairness and good conscience, should remit to APF – CPX I the extent of the value conferred, which includes all amounts due, owing, and accruing under the Prithvi Note, the Prithvi Loan Agreement, related Prithvi Loan Documents, and applicable law, including but not limited to, the amount due and payable under the Prithvi Note as of July 13, 2021 in the total amount of $1,748,735.36, consisting of $1,642,987.14 in principal, $45,346.07 in accrued interest, and $60,402.15 in fees, with additional interest accruing at the combined (contract and default interest rate) amount of $821.50 per day, plus such further expenses, costs, and attorneys' fees as the same have accrued and continue to accrue.

147. Bhavesh Patel and Reena Patel, in fairness and good conscience, should remit to APF – CPX I the extent of the value conferred, which includes all amounts due, owing, and accruing under the BJH Note, the BJH Loan Agreement, related BJH Loan Documents, and applicable law, including but not limited to, the amount due and payable under the BJH Note as of July 13, 2021 in the total amount of $1,996,230.60, consisting of $1,880,457.44 in principal, $37,226.16 in accrued interest, and $81,926.92 in fees, less $3,379.92 in unapplied master

reserves, with additional interest accruing at the combined (contract and default interest rate) amount of $940.23 per day.

148.   Hitesh Patel, in fairness and good conscience, should remit to APF – CPX I the extent of the value conferred, which includes all amounts due, owing, and accruing under the Rudra Note, the Rudra Loan Agreement, related Rudra Loan Documents, and applicable law, including but not limited to, the amount due and payable under the Rudra Note as of July 13, 2021 in the total amount of $4,162,904.02, consisting of $4,000,000.00 in principal, $67,836.51 in accrued interest, and $95,067.51 in fees, with additional interest accruing at the combined (contract and default interest rate) amount of $2,000.00 per day, plus such further expenses, costs, and attorneys' fees as the same have accrued and continue to accrue.

## COUNT VII – ATTORNEYS' FEES & COSTS UNDER O.C.G.A. § 13-1-11
*(against all Defendants)*

149.   The foregoing paragraphs of this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

150.   Pursuant to the Loan Documents, Defendants are required to pay Plaintiffs all costs, including reasonable attorneys' fees and expenses, incurred by Plaintiffs in enforcing performance or collecting any payments due under the Loan Documents.

151.   Moreover, Access Point, as loan servicer for Plaintiffs, made demand upon Defendants for its attorneys' fees and costs pursuant to O.C.G.A. § 13-1-11, on July 23, 2021.

152.   As of the date of this Complaint, Defendants have failed to pay Plaintiffs the amounts outstanding under the Loan Documents.

153.   As Defendants failed to make the requisite payment within ten (10) days of the statutory notice, Plaintiffs are entitled to judgment in their favor for statutory attorneys' fees calculated by reference to O.C.G.A. § 13-1-11.

## COUNT VIII – ATTORNEYS' FEES & COSTS UNDER O.C.G.A. § 13-6-11
(*against all Defendants*)

154.   The foregoing paragraphs of this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

155.   As shown by the above, Defendants have acted in bad faith, have been stubbornly litigious, and have caused Plaintiffs undue trouble and expense.

156.   Accordingly, Plaintiffs are entitled to recover their expenses of litigation, including reasonable attorneys' fees, under O.C.G.A. § 13-6-11.

**WHEREFORE**, Plaintiffs respectfully requests that the Court grant judgment in their favor and against Defendants, as follows:

(i)   As to Count I:  Judgment against Jashvant Patel and Hansaben Patel, jointly and severally, for breach of the Sai Ram Guaranty in the total

amount of $1,116,997.11 as of July 13, 2021 (comprised of $965,224.24 in principal, $127,876.94 in accrued interest, and $24,227.75 in fees, less $331.82 in unapplied master reserves, with additional interest accruing at the combined (contract and default interest rate) amount of $482.61 per day, plus expenses, costs, and attorneys' fees as the same have accrued and continue to accrue under the Sai Ram Loan Documents;

(ii)    As to <u>Count II</u>:  Judgment against Hitesh Patel, Bhavesh Patel, and Reena Patel, jointly and severally, for breach of the Viraaj Guaranty in the total amount of $1,283,004.68 as of July 13, 2021 (comprised of $1,171,458.82 in principal, $84,257.96 in accrued interest, and $27,287.90 in fees, with additional interest accruing at the combined (contract and default interest rate) amount of $585.73 per day, plus expenses, costs, and attorneys' fees as the same have accrued and continue to accrue under the Viraaj Loan Documents;

(iii)   As to <u>Count III</u>:  Judgment against Bhavesh Patel and Reena Patel, jointly and severally, for breach of the Prithvi Guaranty in the total amount of $1,748,735.36 as of July 13, 2021 (comprised of $1,642,987.14 in principal, $45,346.07 in accrued interest, and $60,402.15 in fees, with additional interest accruing at the combined

(contract and default interest rate) amount of $821.50 per day, plus expenses, costs, and attorneys' fees as the same have accrued and continue to accrue under the Prithvi Loan Documents;

(iv)     As to <u>Count IV</u>:  Judgment against Bhavesh Patel and Reena Patel, jointly and severally, for breach of the BJH Guaranty in the total amount of $1,996,230.60 as of July 13, 2021 (comprised of $1,880,457.44 in principal, $37,226.16 in accrued interest, and $81,926.92 in fees, less $3,379.92 in unapplied master reserves, with additional interest accruing at the combined (contract and default interest rate) amount of $940.23 per day, plus expenses, costs, and attorneys' fees as the same have accrued and continue to accrue under the BJH Loan Documents;

(v)      As to <u>Count V</u>:  Judgment against Hitesh Patel for breach of the Rudra Guaranty in the total amount of $4,162,904.02 as of July 13, 2021 (comprised of $4,000,000.00 in principal, $67,836.51 in accrued interest, and $95,067.51 in fees, with additional interest accruing at the combined (contract and default interest rate) amount of $2,000.00 per day, plus expenses, costs, and attorneys' fees as the same have accrued and continue to accrue under the Rudra Loan Documents;

(vi)    As to <u>Count VI</u>: Reimbursement by Defendants to Plaintiffs for unjust enrichment, to the extent of the value conferred, which includes all amounts due, owing, and accruing under the Loan Documents, and applicable law, including but not limited to,

    a.  Reimbursement by Jashvant Patel and Hansaben Patel to Access Point Funding in the amount due and payable under the Sai Ram Note and Sai Ram Guaranty as of July 13, 2021 in the total amount of $1,116,997.11 (comprised of $965,224.24 in principal, $127,876.94 in accrued interest, and $24,227.75 in fees, less $331.82 in unapplied master reserves, with additional interest accruing at the combined (contract and default interest rate) amount of $482.61 per day, plus such further expenses, costs, and attorneys' fees as the same have accrued and continue to accrue under the Sai Ram Loan Documents;

    b.  Reimbursement by Hitesh Patel, Bhavesh Patel, and Reena Patel to APF – CPX II in the amount due and payable under the Viraaj Note and Viraaj Guaranty as of July 13, 2021 in the total amount of $1,283,004.68, consisting of $1,171,458.82 in principal, $84,257.96 in accrued interest, and $27,287.90 in fees, with

additional interest accruing at the combined (contract and default interest rate) amount of $585.73 per day, plus such further expenses, costs, and attorneys' fees as the same have accrued and continue to accrue under the Viraaj Loan Documents;

c.   Reimbursement by Bhavesh Patel and Reena Patel to APF – CPX I in the amount due and payable under the Prithvi Note and Prithvi Guaranty as of July 13, 2021 in the total amount of $1,748,735.36, consisting of $1,642,987.14 in principal, $45,346.07 in accrued interest, and $60,402.15 in fees, with additional interest accruing at the combined (contract and default interest rate) amount of $821.50 per day, plus such further expenses, costs, and attorneys' fees as the same have accrued and continue to accrue under the Prithvi Loan Documents;

d.   Reimbursement by Bhavesh Patel and Reena Patel to APF – CPX I in the amount due and payable under the BJH Note and BJH Guaranty as of July 13, 2021 in the total amount of $1,996,230.60, consisting of $1,880,457.44 in principal, $37,226.16 in accrued interest, and $81,926.92 in fees, less $3,379.92 in unapplied master reserves, with additional interest accruing at the combined

(contract and default interest rate) amount of $940.23 per day, plus such further expenses, costs, and attorneys' fees as the same have accrued and continue to accrue under the BJH Loan Documents;

e.  Reimbursement by Hitesh Patel to APF – CPX I in the amount due and payable under the Rudra Note and Rudra Guaranty as of July 13, 2021 in the total amount of $4,162,904.02, consisting of $4,000,000.00 in principal, $67,836.51 in accrued interest, and $95,067.51 in fees, with additional interest accruing at the combined (contract and default interest rate) amount of $2,000.00 per day, plus such further expenses, costs, and attorneys' fees as the same have accrued and continue to accrue under the Rudra Loan Documents;

(vii)  As to <u>Count VII</u>:  An award of Plaintiffs' attorneys' fees, costs, and expenses in connection with enforcing its rights under the Loan Documents to the fullest extent permitted under O.C.G.A. § 13-1-11 and Georgia law;

(viii)  As to <u>Count VIII</u>:  An award of Plaintiffs' attorneys' fees, costs, and expenses in connection with enforcing its rights under the Loan

Documents to the fullest extent permitted under O.C.G.A. § 13-6-11 and

Georgia law; and

(ix)   For such other and further relief as this Court deems just, proper, and

equitable.

Submitted this 17th day of August 2021.

THOMPSON HINE LLP

/s/ Alexandra C. Nelson
Alexandra C. Nelson
Georgia Bar No. 241352
Austin B. Alexander
Georgia Bar No. 926059
Two Alliance Center, Suite 1600
3560 Lenox Road
Atlanta, Georgia 30326

Telephone: 404-541-2900
Facsimile:  404-541-2905
*alexandra.nelson@thompsonhine.com*
*austin.alexander@thompsonhine.com*

*Attorneys for Plaintiffs Access Point*
*Funding I 2017-A, LLC, APF – CPX*
*I, LLC, and APF – CPX II, LLC*

## **CERTIFICATE OF COUNSEL REGARDING FONT SIZE**

Counsel certifies that the foregoing has been prepared using Times New Roman font size 14 in accordance with Local Rules 5.1(C)(3) and 7.1(D).

Submitted this 17th day of August 2021.

*/s/ Alexandra C. Nelson*

Alexandra C. Nelson
Georgia Bar No. 241352